## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Jamie Olson,                                    Case No. 0:21-cv-1402

       Plaintiff,

    vs.                                      **Complaint**

Pro-Tainer, Inc.,                               *Jury Trial Demanded Under Fed. R. Civ. P. 38(b)*

       Defendant.

Plaintiff Jamie Olson for his Complaint against the above-named Defendant, hereby states and alleges as follows:

### Introduction

1.      This is a case about a manufacturing company unlawfully denying its employee the legal protections provided by the Families First Coronavirus Response Act ("FFCRA"), while simultaneously terminating that employee under the guise of claiming a lack of business and placing that employee on unemployment with no intention of bringing that employee back to work.

2.      This cause of action is for money damages sustained as a result of Plaintiff Jamie Olson's wrongful termination by Defendant Pro-Tainer, Inc., and related causes of action arising from Plaintiff's wrongful termination.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under

the Families First Coronavirus Response Act ("FFCRA") and Emergency Paid Sick Leave

Act ("EPSLA"), which are enforced through sections 15(a)(3), 16 and 17 of the FLSA, 29

U.S.C. §§ 216-217. *See* 29 C.F.R. § 826.150.

4.      This Court has supplemental jurisdiction over the related state and common

law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same

case or controversy under Article III of the United States Constitution. Plaintiff's state and

common law claims share all common operative facts with his federal law claims, and the

parties are identical. Resolving Plaintiff's federal, state, and common law claims in a single

action serves the interests of judicial economy, convenience, consistency, and fairness to

the parties.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all

incidents, events, and occurrences giving rise to this action occurred in the District of

Minnesota. Moreover, upon information and belief, all of the parties reside in this Judicial

District.

## The Parties

6.      Plaintiff Jamie Olson resides in Douglas County, Minnesota.

7.      At all relevant times, Plaintiff worked for Pro-Tainer, Inc. full-time as Head

Assembler earning $21.00 per hour plus benefits.

8.      Defendant Pro-Tainer, Inc. is a Minnesota corporation with registered and

principal offices at 1301 36th Avenue W., Alexandria, Douglas County Minnesota 56308.

9.     Defendant sells and manufactures recycling and refuse containers and trailers to cities, counties, military, and private entities.

10.     At all relevant times, Defendant is a company with less than 500 employees and was subject to the Families First Coronavirus Response Act ("FFCRA") which included the Emergency Paid Sick Leave Act ("EPSLA").

11.     At all relevant times, Shaynen Schmidt served as co-owner and Vice President of Pro-Tainer.

**Factual Allegations**

12.     On Thursday, April 2, 2020, Plaintiff began to experience symptoms consistent with COVID-19. Plaintiff went to the doctor and was told to stay home until Plaintiff was symptom free for seventy-two hours.

13.     On Monday, April 6, 2020, Plaintiff returned to work, but Plaintiff's symptoms resumed on Tuesday, April 7, 2020.

14.     On Wednesday, April 8, 2020, Plaintiff's symptoms continued. Plaintiff called his doctor and was told to go home and isolate himself from others. Plaintiff notified Defendant that he was to self-isolate.

15.     Over the next several days, Plaintiff had several conversations with Defendant's Vice President, Shaynen Schmidt, via text message regarding Plaintiff's illness.

16.     On Thursday, April 9, 2020, Defendant told Plaintiff to stay away from work for a while.

3

17.     On Friday, April 10, 2020, Defendant told Plaintiff to stay quarantined for 14 days.

18.     In response to this, Plaintiff asked to use his accrued Paid Time Off ("PTO"), and Defendant indicated he would look into it and use any available PTO.

19.     Shortly after Plaintiff's request for PTO, Defendant told Plaintiff that Plaintiff was going to be put on unemployment because Plaintiff had been out sick.

20.     During that same text message exchange, Plaintiff asked Defendant if Plaintiff could return to work as soon as Plaintiff was healthy.

21.     Defendant replied to Plaintiff indicating that Plaintiff was to stay away and that Defendant was concerned about the company's future sales outlook due to COVID-19.

22.     Plaintiff again asked Defendant if there would still be a job available for Plaintiff after his fourteen day quarantine period.

23.     Defendant told Plaintiff that his job status would depend on how the pandemic continued to effect Defendant's business. Defendant expressed concern that they would not be operating in the next two weeks.

24.     During Plaintiff's quarantine period, Plaintiff learned that Defendant had hired Plaintiff's neighbor, Steve, to work for Defendant starting May 1, 2020.

25.     On April 21, 2020, Plaintiff asked Defendant if Plaintiff would be able to return to work the following week after Plaintiff's quarantine period was over.

26.     Defendant told Plaintiff that Defendant's orders had slowed down due to COVID-19 and that there was a lack of work. Defendant indicated that it could be months before Plaintiff returned to work.

27.     Plaintiff then asked Defendant why Defendant hired Steve to begin May 1, 2020 if there was a lack of work.

28.     Defendant told Plaintiff that Steve was replacing someone and that Defendant had to lay off three other people in addition to Plaintiff.

29.     On April 24, 2020, Defendant told Plaintiff not to text or call other employees regarding work related concerns.

30.     On or around April 28, 2020, Plaintiff sent Defendant a screenshot of the Wage and Hour Division employee information sheet regarding qualifying reasons for leave related to COVID-19 and asked if Plaintiff could get paid for two weeks (80 hours) for qualifying reasons two and three, i.e. the employee has been advised by a health care provider to self-quarantine related to COVID-19 and the employee is experiencing COVID-19 symptoms and seeking a medical diagnosis.

31.     In response to this, Defendant told Plaintiff to send a copy from a health care provider stating the reasons for leave and that they would then be "good to go."

32.     Plaintiff provided the "After Visit Summary" from his doctor to Defendant.

33.     Defendant subsequently ignored Plaintiff's request and never provided Plaintiff with EPSLA paid leave.

34.     On May 1, 2020, Defendant reached out to the new employee, Steve, indicating that Defendant was excited for Steve to begin working for Defendant and that Defendant's orders were good with a positive forecast of more orders coming soon.

35.     In the same text message, Defendant told Steve that if Steve had received any information from Plaintiff it may not be accurate information.

36.     That same day, Defendant told Steve that the only person laid off was Plaintiff, and that Plaintiff was laid off for reasons unrelated to COVID-19. In the same text message, Defendant told Steve, "If I was worried about layoffs, I wouldn't be hiring."

37.     Sometime after April 28, 2020, Defendant told Plaintiff that they would make a final decision regarding Plaintiff's employment by June 1, 2020. Defendant stated that Defendant was "sitting tight with a lot of uncertainties and slower than usual sales."

38.     Defendant never reached out to Plaintiff on June 1, 2020 to discuss Plaintiff's employment.

## COUNT 1 – FAILURE TO PROVIDE EMERGENCY PAID SICK LEAVE
### (29 C.F.R. §§ 826.20 and 826.150(b)(1))

39.     Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully restated herein.

40.     At all relevant times herein, Defendant is a company with less than 500 employees and was thus subject to the FFCRA.

41.     At all relevant times herein, Plaintiff worked for Pro-Tainer, Inc. full-time as Head Assembler earning $21.00 per hour plus benefits.

42.     On or around April 28, 2020, Plaintiff requested two weeks (80 hours) paid leave for the time Plaintiff was unable to work because he was advised by a health care provider to self-quarantine based on the belief that Plaintiff may have COVID-19.

43.     By following the advice of his health care provider to self-quarantine Plaintiff was prevented from being able to work, either at Plaintiff's normal workplace or by telework.

44.     Included in his request, Plaintiff sent Defendant a screenshot of the Wage and Hour Division employee information sheet regarding qualifying reasons for leave related to COVID-19.

45.     Plaintiff also provided Defendant with an "After Summary Visit" from Plaintiff's doctor recommending Plaintiff self-quarantine.

46.     Defendant never asked Plaintiff for any additional information or documentation related to Plaintiff's request for paid sick leave.

47.     Defendant ignored Plaintiff's request and never provided Plaintiff with his statutorily required paid sick leave or otherwise addressed Plaintiff's request.

48.     As a result of Defendant's conduct, Plaintiff has suffered lost wages.

49.     By virtue of its violation of 29 C.F.R. § 826.20, Defendant is considered to have failed to pay Plaintiff the minimum wage as required by section 6 of the FLSA, 29. U.S.C. § 215(a)(3) and is liable to Plaintiff for such relevant violations as set forth in sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216, 217.

50.     Under the relevant sections of the FLSA, Defendant is liable to Plaintiff in the amount of Plaintiff's unpaid minimum wages and an equal amount as liquidated damages, plus costs and attorney's fees.

## COUNT 2 – FAILURE TO RESTORE TO SAME OR SIMILAR POSITION
### (29 C.F.R. §§ 826.130 and 826.150(b)(2))

51.     Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully restated herein.

52.     Plaintiff was eligible for paid sick leave under the EPSLA comprised within the FFCRA.

53.     Plaintiff was entitled to be restored to his same or a similar position after his quarantine period.

54.     Due to Defendant's illness, Defendant told Plaintiff via text message, "Since you have been out sick sorry we are going to place you on unemployment at this time until further notice."

55.     Over the next two weeks, Plaintiff made several inquiries regarding whether he would be able to return to work once Plaintiff's quarantine period was over.

56.     In response, Defendant told Plaintiff they were going to keep Plaintiff on unemployment and did not know when Plaintiff would be able to return.

57.     Defendant tried to justify Defendant's decision by representing to Plaintiff that there was a "lack of work"; that Defendant had "slower than usual sales"; and that Defendant had to lay off three other people in addition to Plaintiff.

58.     In the meantime, Defendant hired Plaintiff's neighbor, Steve, to work for Defendant beginning May 1, 2020.

59.     While recruiting Steve, Defendant told Steve that Defendant's "orders were good with a positive forecast of more orders coming soon" and that "If [Defendant] was worried about layoffs, [Defendant] wouldn't be hiring."

60.     Sometime after April 28, 2020, Defendant told Plaintiff that they would make a final decision regarding Plaintiff's employment by June 1, 2020.

61.     Defendant never reached out to Plaintiff on June 1, 2020 to discuss Plaintiff's employment.

62.     As a result of Defendant's conduct, Plaintiff has suffered lost wages.

63.     By virtue of its violation of 29 C.F.R. § 826.130, Defendant is considered to have violated section 15(a)(3) of the FLSA, 29. U.S.C. § 215(a)(3) and is liable to Plaintiff for such relevant violations as set forth in sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216, 217.

64.     Under the relevant sections of the FLSA, Defendant is liable to Plaintiff in the amount of Plaintiff's lost wages and an additional amount as liquidated damages, costs and attorney's fees.

## COUNT 3 – WRONGFUL DISCHARGE
### (29 C.F.R. §§ 826.150(a) and 826.150(b)(2))

65.     Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully reinstated herein.

66.     At all relevant times, Defendant is a company with less than 500 employees and is thus subject to the FFCRA.

67.     Between April 2 and April 8, 2020, Plaintiff experienced symptoms of COVID-19.

68.     On April 8, 2020, Plaintiff called his doctor and was told to go home and isolate himself from others.

69.     During Plaintiff's quarantine period, Defendant placed Plaintiff on unemployment despite Plaintiff's requests to return to work after Plaintiff's quarantine period was over.

70.     Defendant strung Plaintiff along on unemployment for approximately two months.

71.     Sometime after April 28, 2020, Defendant told Plaintiff they would call Plaintiff to notify Plaintiff of their decision on June 1, 2020.

72.     On June 1, 2020, Defendant did not contact Plaintiff regarding his employment status.

73.     Sometime after June 10, 2020, Defendant told Plaintiff to come pick up his tools, thereby terminating Plaintiff's employment.

74.     Defendant wrongfully terminated Plaintiff because of Plaintiff's protected activity under the FFCRA.

75.     There is a causal link between Plaintiff's protected activity and Defendant's adverse employment action.

76.     As a result of Defendant's conduct, Plaintiff has suffered wage loss.

77.    By virtue of its violation of 29 C.F.R. § 826.150(a), Defendant is considered to have violated section 15(a)(3) of the FLSA, 29. U.S.C. § 215(a)(3) and is liable to Plaintiff for such relevant violations as set forth in sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216, 217.

78.    Under the relevant sections of the FLSA, Defendant is liable to Plaintiff in the amount of Plaintiff's lost wages and an additional amount as liquidated damages, plus costs and attorney's fees.

### COUNT 4 – FAILURE TO PAY WAGES PROMPTLY
### (MINN. STAT. § 181.13(a))

79.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully restated herein.

80.    On Friday, April 10, 2020, Defendant told Plaintiff to stay quarantined for 14 days due to Plaintiff's COVID-19 symptoms.

81.    Plaintiff asked to use his accrued Paid Time Off ("PTO") and Defendant indicated he would look into it and use any available PTO.

82.    Defendant subsequently told Plaintiff they were placing Plaintiff on unemployment.

83.    Plaintiff received his final paycheck, but Plaintiff's accrued and unused PTO was not included on this paycheck despite his request for PTO for the days Plaintiff was out sick.

84.    Accrued PTO is wages under Minn. Stat. § 181.13(a).

85.    Plaintiff did not receive his PTO within fifteen days of his demand.

86.     As a result of Defendant's failure to pay Plaintiff's PTO within 15 days of Plaintiff's demand, Defendant is liable to Plaintiff in the amount equal to Plaintiff's average daily earnings at Plaintiff's regular rate of pay for up to fifteen days that Defendant was in default.

## COUNT 5 - DEFAMATION

87.     Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully restated herein.

88.     On Friday, April 10, 2020, Defendant told Plaintiff to stay quarantined for 14 days.

89.     That same day, Defendant told Plaintiff they were going to put Plaintiff on unemployment because Plaintiff had been out sick.

90.     Defendant subsequently recruited Plaintiff's neighbor, Steve, to work for Defendant.

91.     While recruiting Steve to work for Defendant, Defendant's Vice President, Shaynen Schmidt, told Steve via text message "[I]f you have received any current information from Jamie it may not be accurate…" and the "only person that is laid off is Jamie for other reasons besides COVID-19."

92.     The statement made to Steve that Plaintiff was "laid off … for other reasons besides COVID-19" was false because Defendant did in fact end the employment relationship because Plaintiff had been out sick with symptoms of COVID-19.

93.     This false statement was damaging to Plaintiff's reputation because it can be reasonably interpretated to mean that the "reasons besides COVID-19" were poor performance.

94.     Mr. Schmidt did not make this statement in good faith, from a proper motive, on a proper occasion, or based on a reasonable belief.

95.     This statement goes directly to Plaintiff's profession and is per se actionable without any showing of actual damages.

96.     As a result of Defendant's conduct, Defendant is liable to Plaintiff for general and punitive damages including harm to Plaintiff's reputation and standing in the community, mental distress, humiliation, and embarrassment.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

### <u>Prayer for Relief</u>

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     As to Counts 1-3, for a money judgment against Defendant for compensatory damages for lost wages, employment benefits or other compensation denied or lost by such violations, including by not limited to back and front pay; an equal amount as liquidated damages; costs; and reasonable attorney's fees.

2.     As to Count 4, for a money judgment against Defendant for an amount equal to Plaintiff's average daily earnings at Plaintiff's regular rate of pay for up to fifteen days that Defendant was in default.

3.    As to Count 5, for a money judgment against Defendant for general damages for harm to Plaintiff's reputation and standing in the community, mental distress, humiliation, and embarrassment.

4.    For such other and further relief as this Court deems just and equitable.

Dated this 15th day of June, 2021.

SWENSON LERVICK SYVERSON
TROSVIG JACOBSON CASS, P.A.

By: _____
Thomas A. Jacobson
Attorney for Plaintiff
710 Broadway, P.O. Box 787
Alexandria, MN 56308
Telephone: (320) 763-3141
Email: taj@alexandriamnlaw.com
Atty. Registration # 265810

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, reasonable attorney fees and witness fees may be awarded to the adverse party provided that the Court finds reasonable cause for the same pursuant to Minn. Stat. § 549.211.

_____
Thomas A. Jacobson

14